COMMONWEALTH of Pennsylvania, Appellee,

v.

John PREACHER, Appellant.

Superior Court of Pennsylvania.

Submitted March 31, 2003.

Filed June 24, 2003.

**1236**

Clinton L. Johnson, Chester, for appellant.

Michelle P. Hutton, Asst. Dist. Atty., Media, for Com., appellee.

Before: DEL SOLE, P.J., TODD, and KELLY, JJ.

OPINION BY TODD, J.

¶ 1 John Preacher appeals the June 27, 2002 Judgment of Sentence[1] imposed by the Delaware County Court of Common Pleas following his conviction at a bench trial of possession of drug paraphernalia[2] and possession of a controlled substance with intent to deliver ("PWID").[3] We are constrained to vacate Appellant's judgment of sentence.

¶ 2 The facts of the instant case were summarized by the trial court as follows:

> Officer Marlowe Freeman, a Narcotics Officer with the Chester Police Department, received an anonymous tip from a confidential informant (CI). The CI told Officer Freeman that a black male wearing a black jacket and jeans who goes by the name of 'John' or 'Slab' was selling

---

**1.** Appellant purports to appeal from the September 18, 2002 Order denying his post-trial motions. An appeal from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of sentence. *See Commonwealth v. Schauffler,* 397 Pa.Super. 310, 314, 580 A.2d 314, 316 (1990). The appeal in this case falls within no recognized

exception to the general rule. *See id.* Therefore, this appeal properly lies from the judgment of sentence and not from any post-trial order. We have corrected the caption accordingly.

**2.** 35 Pa.C.S.A. § 780–113(a)(32).

**3.** 35 Pa.C.S.A. § 780–113(a)(30).

cocaine at Stanley's Bar. Based on this tip, Officer Freeman and his partner went to Stanley's Bar. Upon arriving at Stanley's Bar the police saw a black male, known to Officer Freeman as John Preacher, Appellant, sitting at the bar counting money. Appellant matched the description given by the CI, was seated in the same place [as described by the CI], and was a known drug trafficker. When Officer Freeman approached Appellant, he immediately tossed the money he was counting to the side. Officer Freeman told Appellant about the investigation, and then proceeded to patdown Appellant.

Officer Freeman patted down the right pant leg of Appellant, with an open palm. Officer Freeman stopped at the right pocket because he felt what he believed was a controlled substance. As he brushed up against the pocket, Officer Freeman felt an object that had a course and bumpy surface. These bumps led Officer Freeman to believe Appellant's right front pocket contained packaged cocaine. Officer Freeman did not manipulate the items in Appellant's pocket. The pat down revealed one 2″ × 3½″ clear zip-lock bag which contained thirty-six (36) 5/8″ × 7/8″ clear bags containing a white powder/rocky substance. Officer Freeman also confiscated money totaling $145.00[.]

(Trial Court Opinion, 11/12/02, at 3–4 (record citations omitted).)

¶ 3 Appellant was arrested and charged with possession of a controlled substance,[4] PWID, and possession of drug paraphernalia. Prior to trial, Appellant moved to suppress evidence of the cocaine and statements made at the time of his arrest. Following a hearing, the trial court denied Appellant's motion on June 26, 2002. On June 27, 2002, Appellant was convicted of

possession of drug paraphernalia and PWID and was sentenced to a mandatory minimum term of 3 to 6 years incarceration, plus a $10,000 fine on the PWID offense, and a consecutive term of one year probation on the charge of possession of drug paraphernalia. Appellant filed posttrial motions, which were denied by the court. This timely appeal followed.

¶ 4 Although Appellant sets forth six separate issues in his Statement of Questions Involved (Appellant's Brief at 3), all of those issues are addressed under a single argument section in Appellant's brief: "The trial court erred in denying the Appellant's motion to suppress evidence where the police officers lacked a search warrant and sufficient probable cause, which is legally required to justify a lawful stop, search and seize, particularly when the officers did not see the Appellant engage in any criminal activity." (*Id.* at 6.) In reviewing a trial court's denial of a motion to suppress, this Court must determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993). In making this determination, we must consider the Commonwealth's evidence and so much of the evidence of Appellant as remains uncontradicted when fairly read in the context of the record as a whole. *Id.*

¶ 5 Our Supreme Court has explained the jurisprudence with respect to an investigatory stop as follows:

It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience,

4. 35 Pa.C.S.A. § 780–113(a)(16).

that criminal activity may be afoot. An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion.

*Commonwealth v. E.M.*, 558 Pa. 16, 25–26, 735 A.2d 654, 659 (1999) (citations omitted).

¶ 6 Thus, we must first determine whether the police had a reasonable suspicion that criminal activity was afoot, and, therefore, were justified in conducting an investigatory stop of Appellant. In *Commonwealth v. Kondash*, 808 A.2d 943 (Pa.Super.2002), this Court recognized:

Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. *Commonwealth v. Wimbush*, 561 Pa. 368, 750 A.2d 807 (2000). Thus, like the assessment applicable to the determination of probable cause, quantity and quality of information are considered when assessing the totality of the circumstances, but with a lesser showing needed to demonstrate reasonable suspicion. *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153 (2000).

Where ... the underlying source of police information is a known informant, there is a stronger case for acting upon the information than exists in the case of an anonymous informant. *See Adams v. Williams*, [407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ] (holding that a tip from a known informer carried enough indicia of reliability to support a *Terry* search even though the

same tip from an anonymous informant likely would not have). One reason for crediting the known informant's information with more reliability is that the known informant, unlike the anonymous one, faces risk of prosecution for filing a false claim should the information be untrue. *See Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997) (citing *Adams, supra.*).

*Kondash*, 808 A.2d at 946–947. Moreover, "an informant's tip—even an anonymous tip—relating insider information or a person's future actions bears sufficient indicia of reliability to justify an investigatory stop when corroborated by police." *Id.* at 947 (citations omitted).

¶ 7 In its opinion, the trial court notes that Officer Freeman indicated in his Affidavit of Probable Cause that "the CI was a credible source and had provided reliable information in the past." (Trial Court Opinion, 11/12/02, at 4.) The court further noted that "[t]he information provided by the CI was corroborated by Officer Freeman's own observations in Stanley's Bar. Officer Freeman received the telephone call from the CI at 1852 hours and he arrived at the bar at 1855 hours. Officer Freeman observed, Appellant in the exact area of Stanley's Bar, wearing clothes similar in style and color as described by the CI." (*Id.* at 5.) Arguably, therefore, the police were justified in conducting an investigatory stop of Appellant.

¶ 8 Even assuming, however, that the police were justified in conducting an investigatory stop of Appellant based on their confirmation of certain facts provided by the CI, we are compelled to conclude that Officer Freeman did not possess the reasonable suspicion required by our Supreme Court to justify a pat-down of Appellant. The trial court determined that "[s]ince Officer Freeman had reasonable suspicion to conduct a legitimate investiga-

tory stop, he was permitted to conduct a *Terry* frisk. Officer Freeman was permitted to pat down Appellant to discover the presence of weapons to insure the safety of himself and the other Officers." (*Id.* at 8.) However, our Supreme Court has explained:

> If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to justify a frisk under [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] **the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."** Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."

*E.M.*, 558 Pa. at 25–26, 735 A.2d at 659 (1999) (citations omitted) (emphasis added).

¶ 9 This Court also recognized in *Commonwealth v. Myers*, 728 A.2d 960 (Pa.Super.1999), that "[t]o justify a frisk incident to an investigatory stop, the police need to point to **specific and articulable** facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' a phrase invoked by the officers in this case, becomes meaningless." *Id.* at 963 (quoting *Commonwealth v. Patterson*, 405 Pa.Super. 17, 21, 591 A.2d 1075, 1078 (1991)) (emphasis original). In *Myers,* the appellant was observed entering and leaving a house that was under surveillance for drug activity within a two-

minute time period. The surveillance officer thought that he saw something in the appellant's hand as he left the house, but was not certain. The appellant then placed his hand in his pocket. When the appellant entered his vehicle and drove away, the police followed him and stopped his vehicle. The appellant was removed from his vehicle and frisked, at which time an officer discovered in the appellant's pocket two plastic packets containing crack cocaine. The appellant was arrested, charged, and subsequently convicted of knowing and intentional possession of cocaine. At the hearing on the appellant's motion to suppress evidence, in which the appellant alleged that the police did not have reasonable suspicion to stop or frisk him, an officer testified that he frisked the appellant "for my own protection." *Myers,* 728 A.2d at 963. When asked what he was searching for, the officer replied "[f]or weapons. We stop people all the time and they have weapons on them." *Id.* Although this Court concluded that the police had reasonable suspicion to stop the appellant, we held that the frisk of appellant was not legally justified because there was no evidence that the officer had reason to believe that the appellant was armed and dangerous. *Id.* In so holding, we explained:

> If the reasons for the frisk given by the officer in this case had been found to be sufficient, it follows that the police, after stopping any vehicle, could remove the driver or passengers and conduct a frisk since the officers "stop people all the time [who] have weapons on them." While this Court acknowledges the importance of protecting police officers in the performance of their duties, the law requires that an officer have some reason to believe that a particular suspect is armed and dangerous.

*Id.* at 964 (citation omitted).

¶ 10 In the instant case, when asked at the suppression hearing why he conducted

a pat-down of Appellant, Officer Freeman responded "[f]or my safety, officers that were with, as well as the Defendant's." (N.T. Hearing, 6/26/02, at 36.) The officer, however, did not articulate any specific facts that led him to believe that Appellant may have been armed and/or dangerous. Officer Freeman testified that when he and another officer entered the bar, they approached Appellant and saw him counting money. When Appellant saw the officers approach, Appellant tossed the money he had been counting onto the bar. The officers then advised Appellant that they had received information that he was holding and/or selling drugs in the bar. Appellant stated that he did not have any drugs on him, and, according to the officers, "became nervous." (*Id.* at 33.) When asked to describe how Appellant acted nervous, Officer Freeman replied that "[Appellant's] eyes were bulging, he was looking back and forth, tossing of the money." (*Id.*) Officer Freeman asked Appellant to stand up, and Appellant complied. The officer then asked Appellant if he had any weapons or any other items on his person that he should be concerned about, and the Appellant replied that he did not. At this point, Officer Freeman conducted a pat-down search of Appellant.

¶ 11 We reiterate our concern for the protection of police officers in the performance of their duties. However, Officer Freeman did not articulate any specific reasons that would suggest Appellant was armed and dangerous, stating only in general terms that he frisked Appellant for his safety and the safety of other officers and Appellant. Under the current state of the law in this Commonwealth, such a general statement does not provide a sufficient basis for conducting a frisk incident to an investigatory stop. As a result, we must conclude that even if Officer Freeman was justified in conducting an investigatory stop of Appellant based on the information

he received from a confidential informant, he did not have reasonable suspicion to conduct a pat down of Appellant. Accordingly, we hold that the trial court erred in refusing to suppress the evidence discovered as a result of the search. For this reason, we vacate Appellant's judgment of sentence and remand this matter for a new trial.

¶ 12 Judgment of sentence **VACATED**. Case **REMANDED**. Jurisdiction **RELINQUISHED**.