J-S72007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF
                              | PENNSYLVANIA
                  Appellant   |
                              |
            v.                |
                              |
ROBERT BENUSSI               |
                              |
                  Appellee    | No. 43 MDA 2016

Appeal from the Order Entered December 3, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0004436-2014

BEFORE:  GANTMAN, P.J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 18, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Luzerne County Court of Common Pleas, granting the suppression motion of Appellee, Robert Benussi.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On December 11, 2014, Officer Dave Balchun notified Officer Sam DeSimone of an armed carjacking that had occurred earlier in the day.  The Wilkes-

_____

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the trial court's suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case.  Accordingly, this appeal is properly before us for review.  ***See Commonwealth v. Cosnek***, 575 Pa. 411, 836 A.2d 871 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

_____

*Retired Senior Judge assigned to the Superior Court.

Barre Police Department issued a Be on the Lookout (BOLO) notice for a silver or gold Cadillac sedan stolen from Victim. Officer Balchun told Officer DeSimone the suspect was a "male with shorter-cut hair, Italian-looking, with scruffy facial hair." Officer Balchun stated Victim knew Appellee as "Rob," and Victim had picked Appellee up from the home of Rachel Smyden earlier that day.

Officer DeSimone was familiar with Appellee and Ms. Smyden, and drove to Ms. Smyden's address to look for Appellee. Officer DeSimone noticed a light coming from the back porch, and a Nissan Rogue with its motor running parked by Ms. Smyden's garage. The driver told the officers he was there with Appellee and another female, who were both inside. As the officers approached the home, they spotted Appellee walking toward them. Appellee matched Victim's description of "Rob." The officers advised Appellee to keep his hands visible. After Appellee placed his right hand in his pocket, Officer DeSimone secured Appellee's hands behind his back, and conducted a pat-down search for weapons pursuant to **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Officer DeSimone seized a silver hatchet from Appellee's waistband. Officer DeSimone continued the pat-down, and "felt a cylindrical object, which it was immediately apparent to [him], through [his] training and drug experience, and, you know, making multiple drug arrests [as] part of the Luzerne County Drug Task Force, as it—it appeared to be like a pipe, and [he] could feel, like—like, a

mouthpiece, sort of." (N.T. Suppression Hearing, 7/1/15, at 14). He removed the object from Appellee's pocket, and determined it was a "snuffer," used to inhale powdered substances. The officers then arrested Appellee and seized additional contraband on his person after a more thorough search, which yielded: a straight razor; a pipe; numerous .22 caliber bullets; 28 empty glassine bags; a cigarette pack containing a white powdered substance later determined to be bath salts; a little over $80.00; and one cell phone. Following Appellee's arrest, the officers also located a loaded .22 caliber firearm in the snow near Ms. Smyden's home.

The Commonwealth charged Appellee with one count each of persons not to possess firearms, carrying a firearm without a license, possession with intent to distribute; two counts of prohibited offensive weapons and possession; and three counts of paraphernalia. On May 1, 2015, Appellee filed a motion to suppress all evidence obtained as a result of his interaction with the officers. Specifically, Appellee contended Officer DeSimone conducted an investigative detention in the absence of reasonable suspicion, and executed an arrest and subsequent search without probable cause. The court conducted a hearing on July 1, 2015. On December 3, 2015, the court filed an order and opinion granting Appellee's suppression motion in part, and suppressing the snuffer and items taken from Appellee's person. In its Findings of Fact and Conclusions of Law, the court stated:

\* \* \*

15. The testimony of Officer DeSimone does not establish probable cause under the "plain feel doctrine" to seize the item that turned out to be a "snuffer" from [Appellee] and thus said seizure was unlawful.

16. The item that turned out to be a "snuffer" is therefore suppressed and is inadmissible against [Appellee].

17. [Appellee's] arrest based on the unlawful seizure was not based on probable cause and was unlawful.

18. The "fruit of the poisonous tree" doctrine mandates suppression and exclusion of evidence obtained from, or acquired as a consequence of, official unlawful conduct to include searches and seizures.

19. The "exclusionary rule" mandates that evidence obtained as a result of an unlawful search or seizure (to include the fruits thereof) is inadmissible in court against a defendant.

20. The search incident to the unlawful arrest was consequently unlawful and all items seized from [Appellee] as a result thereof…are hereby suppressed and are inadmissible against [Appellee].

(Trial Court's Findings of Fact and Conclusions of Law, filed December 4, 2015, at 7-8). The court did not suppress the loaded rifle found on the ground near Appellee, because "[t]he retrieval of the handgun…did not involve a search of [Appellee] and did not directly result from any unlawful search or seizure." (*Id.* at 8).

The Commonwealth timely filed a notice of appeal on Monday, January 4, 2016. On January 5, 2016, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely filed a Rule 1925(b) statement on

January 20, 2016.

The Commonwealth raises one issue for our review:

> WHETHER THE [TRIAL] COURT ERRED WHEN IT
> SUPPRESSED THE "SNUFFER" TAKEN FROM [APPELLEE]
> WHEN [OFFICER DESIMONE] TESTIFIED IT WAS
> IMMEDIATELY APPARENT TO HIM THAT THE OBJECT WAS
> CONTRABAND BASED ON HIS EDUCATION, TRAINING AND
> EXPERIENCE, AND THEN SUPPRESSED OTHER ITEMS
> TAKEN FROM [APPELLEE'S] PERSON AS "FRUIT OF THE
> POISONOUS TREE"[?]

(Commonwealth's Brief at 4).

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. As long as there is some evidence to support them, we are bound by the suppression court's findings of fact. Most importantly, we are not at liberty to reject a finding of fact which is based on credibility.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (internal citation omitted). "The suppression court's conclusions of law, however, are not binding on the appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Id.* (quoting *Commonwealth v. Keller*, 823 A.2d 1004, 1008 (Pa.Super. 2003), *appeal denied*, 574 Pa. 765, 832 A.2d 435 (2003)).

The Commonwealth contends a police officer may seize contraband

during a **Terry** frisk in the absence of a warrant, pursuant to the "plain feel" doctrine. The Commonwealth asserts Officer DeSimone has extensive training and experience conducting drug investigations. The Commonwealth maintains Officer DeSimone immediately recognized the cylindrical object in Appellee's pocket as "contraband." The Commonwealth claims Officer DeSimone did not manipulate the item when he determined it was contraband. The Commonwealth states the trial court erred in suppressing the snuffer taken from Appellant's pocket. The Commonwealth insists the trial court also improperly suppressed other items taken in the subsequent search incident to arrest, as fruit of the poisonous tree. The Commonwealth concludes this Court must reverse the trial court's order granting Appellee's motion to suppress the snuffer and other items seized from his person. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

**Goldsborough, supra** at 305 (quoting **Commonwealth v. Bryant**, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d

392 (2005)).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa.Super. 2000)).

> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest.
>
> \* \* \*
>
> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Jones, supra*** at 116 (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

> Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (quoting *Commonwealth v. Conrad*, 892 A.2d 826, 829 (Pa.Super. 2006), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006)) (internal citations and quotation marks omitted).

"If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." *Commonwealth v. Preacher*, 827 A.2d 1235, 1239 (Pa.Super. 2003).

> In order to justify a frisk under [*Terry, supra*] **the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.** Such a frisk, permitted without a

warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

*Id.* (quoting **Commonwealth v. E.M.**, 558 Pa. 16, 25-26, 735 A.2d 654, 659 (1999)) (emphasis in original) (internal quotation marks omitted).  "The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer."  **Commonwealth v. Cooper**, 994 A.2d 589, 592-93 (Pa.Super. 2010), *appeal denied*, 608 Pa. 660, 13 A.3d 474 (2010) (quoting **Commonwealth v. Taylor**, 565 Pa. 140, 153, 771 A.2d 1261, 1269 (2001)).

"Weapons found as a result of [a **Terry**] pat-down may be seized.  Nonthreatening contraband may be seized only if it is discovered in compliance with the plain feel doctrine."  **Commonwealth v. Thompson**, 939 A.2d 371, 376 (Pa.Super. 2007), *appeal denied*, 598 Pa. 766, 956 A.2d 434 (2008).

> [The United States Supreme Court in **Minnesota v. Dickerson**, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)] held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a **Terry** frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object.  As **Dickerson** makes clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent.  Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband.  If, after feeling the

object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

***Commonwealth v. Stevenson***, 560 Pa. 345, 353, 744 A.2d 1261, 1265 (2000) (most citations omitted).

Instantly, Officer DeSimone testified another officer alerted him to an armed carjacking that had occurred earlier in the day. Officer DeSimone was familiar with the suspect, given the name and description provided by Victim. Officer DeSimone drove to the home of Appellee's associate, based on information that Appellee might be there. When Officer DeSimone saw Appellee, the officer asked Appellee to keep his hands visible during their interaction. Appellee failed to comply. Instead, Appellee placed his hands in his pockets. The officer then secured Appellee's hands behind his back and conducted a ***Terry*** frisk for weapons. Officer DeSimone testified that he "felt a cylindrical object [that] appeared to be like a pipe, and [he] could feel, like—like, a mouthpiece, sort of." (N.T. at 14). When he removed the object from Appellee's clothing, he discovered it was a snuffer used for inhaling powdered substances. After arresting Appellee, officers seized other incriminating items from Appellee's person, and the loaded .22 caliber gun nearby in the snow. The trial court heard Appellee's suppression motion, and suppressed the snuffer and all items taken from Appellee's person, except the rifle.

Based upon the foregoing, the suppression court found "the detention and initial frisk of [Appellee] was lawful."[2]  Under the totality of the circumstances, Officer DeSimone's knowledge of Appellee as a particular suspect in an armed carjacking, combined with his suspicious and noncompliant behavior, created reasonable suspicion of criminal activity. *See Jones, supra*; *Young, supra*.  Further, the circumstances justified Officer DeSimone's decision to subject Appellee to a *Terry* frisk.  *See Preacher, supra*.

Nevertheless, Officer DeSimone's seizure of the snuffer did not comply with the plain feel doctrine, because the seizure of non-threatening contraband during a *Terry* frisk requires that the incriminating nature of the contraband be immediately apparent to the officer.  *See Stevenson, supra*. Here, Officer DeSimone's own testimony describes only a "cylindrical object" that appeared "like a pipe."  (N.T. at 14).  His testimony indicated he was able to identify it as drug paraphernalia only after he removed it from

_____

[2] To the extent the trial court states the initial interaction between Appellee and Officer DeSimone was a mere encounter, we disagree.  Officer DeSimone approached Appellee on private property at 12:30 a.m., and repeatedly requested Appellee to keep his hands visible.  Under those circumstances, Appellee was not free to leave or refrain from answering Officer DeSimone's questions.  *See Jones, supra*.  Further, the trial court also refers to Officer DeSimone's "seizure" of Appellee.  Nevertheless, the facts surrounding the initial interaction were sufficient to justify an investigatory detention.  *See Jones, supra*; *Cottman, supra*.  We may affirm the trial court on any ground.  *See Commonwealth v. Lynch*, 820 A.2d 728, 730 n.3 (Pa. Super. 2003).

Appellee's pocket. He was unaware of the incriminating nature of the object during the pat-down. Because Officer DeSimone failed to demonstrate probable cause to suspect the object was contraband without conducting some further search, the immediately apparent requirement was not met and the plain feel doctrine cannot justify the seizure of the snuffer and other items from Appellee's person. **See Stevenson, supra**. Thus, we conclude, the court properly suppressed the evidence obtained from the search of Appellee's person. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016