J-S62044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON J. KAUFFMAN | |
| Appellant | No. 522 MDA 2016 |

Appeal from the Judgment of Sentence March 23, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001152-2015

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:              **FILED NOVEMBER 23, 2016**

Appellant, Aaron J. Kauffman, appeals from the judgment of sentence entered in the Lebanon County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance and drug paraphernalia.[1]  For the following reasons, we affirm in part and reverse in part the suppression ruling in this case, vacate the judgment of sentence, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. At approximately 6:30 p.m. on February 13, 2015, Officer David Lear received a dispatch reporting a robbery at a Domino's Pizza shop.  The dispatcher provided Officer Lear with a description of the robbery suspect

---

[1] 35 P.S. §§ 780-113(a)(16), (a)(32).

and noted the suspect was wearing a green bandana at the time of the robbery. When he received the dispatch, Officer Lear was located three blocks from the pizza shop. While Officer Lear was driving toward the scene of the robbery, he saw Appellant walking along the sidewalk. Officer Lear noticed Appellant met the description of the robbery suspect conveyed over the police dispatch. Appellant was not wearing a bandana at the time. Officer Lear pulled over and stopped Appellant. During a pat-down search of Appellant, Officer Lear felt a "hard object" in Appellant's pants pocket, which the officer believed was a weapon. (N.T. Suppression Hearing, 8/26/15, at 6.) After removing the object from Appellant's pocket, Officer Lear discovered it was a foil pipe. Officer Lear continued the pat-down and felt a hard lump in Appellant's other pocket. Officer Lear testified he believed the hard lump "could have been a bandana rolled up in [Appellant's] pocket." (*Id.*) He removed the item, which was a packet of synthetic marijuana.

On August 5, 2015, Appellant filed a motion to suppress the evidence found in his pockets during Officer Lear's pat-down search. The court held a hearing on the motion on August 26, 2015. At the hearing, Officer Lear testified he could not recall the specific description in the police dispatch without the dispatch records, but he recalled that Appellant matched the description and was in close proximity to the scene of the robbery. Officer Lear also described the evening as dark and bitterly cold. He stated, "[At] that time of day and that time of the year there's not a lot of people walking

around." (*Id.* at 9.) Officer Lear testified he performed the pat-down search because he routinely does a pat-down of suspects for his own safety. Nevertheless, on cross-examination the officer admitted that, at the time, he "didn't believe [Appellant] was armed and dangerous." (*Id.* at 10.)

On October 13, 2015, the court granted in part and denied in part Appellant's suppression motion. In its opinion, the court stated both the stop and the frisk were supported by: Appellant's proximity to the location of the robbery; the cold and bitter temperature that night; Appellant meeting the description of the robber; and Officer Lear's lack of back-up officers. The court then evaluated the items seized in the frisk under the "plain feel" doctrine. The court rejected Officer Lear's contention that the foil pipe appeared to be a weapon. Instead, the court described the pipe as a two-inch piece of flexible foil that could not reasonably be mistaken for any weapon or immediately apparent *via* touch as contraband. Thus, the court granted Appellant's motion to suppress the foil pipe. The court, however, denied Appellant's motion to suppress the marijuana, stating:

> Like the foil "pipe," we are not aware of any way that the [marijuana] could have been confused for a weapon. While we understand how the marijuana could be perceived as a "lump," it was neither hard nor stiff as a weapon might feel.
>
> While Officer Lear could not have reasonably confused the marijuana package for a weapon, that does not end our inquiry. … In this case, Officer Lear was aware that the person who robbed the Domino Pizza store was wearing a bandana at the time of the robbery. When he felt the "hard lump," he perceived that it could have been the

bandana that the robber was described to possess.

(Trial Court Opinion, filed October 13, 2015, at 14).

Appellant proceeded to a bench trial on January 29, 2016, and the court convicted him of possession of a controlled substance and drug paraphernalia.[2]  On March 23, 2016, the court sentenced Appellant to sixty (60) days to eighteen (18) months' incarceration for the possession offense, and a concurrent term of one (1) month to one (1) year of imprisonment for the drug paraphernalia offense.  Appellant timely filed a notice of appeal. On March 24, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant complied on the same day.

Appellant raises two questions for our review:

> DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS PHYSICAL EVIDENCE IN THAT THERE WAS NO REASONABLE SUSPICION TO JUSTIFY AN INVESTIGATIVE DETENTION?
>
> DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS PHYSICAL EVIDENCE IN THAT THERE WAS NO BASIS FOR A SEARCH WHEN THE POLICE DID NOT BELIEVE THAT APPELLANT WAS ARMED AND DANGEROUS AND, IN FACT, EXPRESSLY TESTIFIED THAT THEY DID NOT BELIEVE APPELLANT TO BE ARMED AND DANGEROUS?

(Appellant's Brief at 5).

We review the denial of a suppression motion subject to the following

_____

[2] The paraphernalia conviction stemmed from the packaging of the marijuana taken from Appellant's pocket.

principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
>> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

In his first issue, Appellant argues the police dispatch description was too limited to justify the kind of investigative detention Officer Lear conducted. Appellant asserts the Commonwealth failed to show Officer Lear had reasonable suspicion to stop Appellant for questioning, based on the officer's testimony that he was unable to recall whether the dispatch description included the suspect's race or sex. Appellant maintains he was several blocks away from the robbery scene when Officer Lear stopped him. Appellant challenges the court's characterization of his walk as "consistent" with that of a robbery suspect, because the record does not support that finding. Appellant concedes the evening was cold and bitter, but he denies it was unusual to be outside walking at 6:30 p.m. Appellant concludes Officer Lear lacked reasonable suspicion to conduct an investigative detention of

Appellant. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting ***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (quoting ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa.Super. 2000)).

> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest.

\* \* \*

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot.
>
> *    *    *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Jones, supra* at 116 (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

> Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Young***, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (quoting ***Commonwealth v. Conrad***, 892 A.2d 826, 829 (Pa.Super. 2006), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006)) (internal citations and quotation marks omitted).

Instantly, Officer Lear received a police radio dispatch reporting a robbery at a nearby Domino's Pizza shop. While responding to the call, Officer Lear noticed Appellant walking down a street near the scene of the robbery. Officer Lear observed Appellant matched the dispatch description of the robbery suspect and noted few people were out walking due to the bitterly cold temperature that evening. Officer Lear then pulled his vehicle over and stopped Appellant.

The Commonwealth concedes the stop was an investigative detention. Given the circumstances, Appellant was not free to walk away from the encounter. ***See Jones, supra***. Nevertheless, the totality of the circumstances indicates Officer Lear possessed sufficient information to stop Appellant, because Appellant was walking in close proximity to the scene of a robbery immediately after it had occurred and the night was cold and bitter, with no one else on the street. Further, Officer Lear testified Appellant fit the dispatch description of the suspect. ***See Young, supra***. Given the court's credibility decisions regarding the facts leading to the stop, this evidence supports the investigative detention. ***See Williams, supra***. Therefore, Appellant's first issue merits no relief.

In his second issue, Appellant asserts that, even if the circumstances supported the initial investigative detention, Officer Lear's frisk of Appellant was unjustified. Appellant indicates Officer Lear admitted he did not think Appellant was armed and dangerous. Appellant maintains Officer Lear searched him primarily for evidence of a crime rather than weapons. Appellant contends Officer Lear removed the small marijuana packet from Appellant's pocket knowing it was not a weapon. Because the search was not for weapons and the bandana was not immediately apparent contraband, Appellant avers the search and seizure was unwarranted, even if Officer Lear believed the object in Appellant's pocket might have been the bandana reportedly worn by the robber. Appellant concludes Officer Lear lacked justification to search him for evidence of the robbery and seize the marijuana packet because he thought it was a bandana used in the robbery, and the court should also have suppressed the marijuana. We agree.

"If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads [the officer] to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." ***Commonwealth v. Preacher***, 827 A.2d 1235, 1239 (Pa.Super. 2003).

> In order to justify a frisk under [***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] **the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed**

> **and dangerous.** Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

*Id.* (quoting **Commonwealth v. E.M.**, 558 Pa. 16, 25-26, 735 A.2d 654, 659 (1999)) (emphasis in original) (internal quotation marks omitted). "The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer." **Commonwealth v. Cooper**, 994 A.2d 589, 592-93 (Pa.Super. 2010), *appeal denied*, 608 Pa. 660, 13 A.3d 474 (2010) (quoting **Commonwealth v. Taylor**, 565 Pa. 140, 153, 771 A.2d 1261, 1269 (2001)).

"Weapons found as a result of [a **Terry**] pat-down may be seized. Nonthreatening contraband may be seized only if it is discovered in compliance with the plain feel doctrine." **Commonwealth v. Thompson**, 939 A.2d 371, 376 (Pa.Super. 2007), *appeal denied*, 598 Pa. 766, 956 A.2d 434 (2008).

> [The United States Supreme Court in **Minnesota v. Dickerson**, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)] held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a **Terry** frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. As **Dickerson** makes clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching,

that what he is feeling is contraband. If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

*Commonwealth v. Stevenson*, 560 Pa. 345, 353, 744 A.2d 1261, 1265 (2000) (most citations omitted).

Instantly, Officer Lear testified on direct examination about the marijuana he removed from Appellant's pocket:

> A. I continued my pat down and I felt like what could have been a bandana rolled up in his pocket. Also with that being part of the [police dispatch] description, I reached in and pulled that out.
>
> Q. And that was what turned out to be the [marijuana] packet?
>
> A. That's correct.

(N.T. Suppression Hearing at 6.) Officer Lear testified on cross-examination as follows:

> Q. When you [patted Appellant] down you were looking for weapons; is that right?
>
> A. I was [patting] him down for my safety, that's correct.
>
> Q. What was it that made you believe that [Appellant] was armed and dangerous about him?
>
> A. **I didn't believe he was armed and dangerous.** When I have a—when I have a confrontation with someone and I stop someone especially after a robbery type thing like that, I will [pat] them down for my safety when I am going to be sitting there talking to them.

- 11 -

(*Id.* at 10) (emphasis added).  Officer Lear gave additional testimony about the search:

> Q.      You were looking for a bandana or green cloth?
>
> A.      That was part of the description that was given out.
>
> Q.      That was part of the description and you were looking for that, correct?
>
> A.      At that point, yes.
>
> Q.      I think in your direct testimony you testified that that's the reason you pulled out that object out of [Appellant's] pocket because you thought it might be the bandana?
>
> A.      That's correct.
>
> Q.      Not because you thought it might be a weapon because you thought it might be the bandana?
>
> A.      That's correct.

(*Id.* at 12.)  Based on this testimony, the court found Officer Lear's frisk of Appellant was justified, and it suppressed the foil pipe but denied Appellant's motion to suppress the marijuana and permitted the prosecution to introduce the marijuana under the "plain feel" doctrine.  In its opinion, the court stated Officer Lear may have believed the marijuana packet in Appellant's pocket was the bandana worn by the robber.

Here, during the prosecution's evidence, Officer Lear failed to articulate specific facts regarding why he believed Appellant was armed and dangerous.  On the contrary, Officer Lear testified he did not think Appellant

was armed. Officer Lear repeatedly admitted during the suppression hearing that he removed the marijuana from Appellant's pocket because he thought it could have been the bandana associated with the robbery, not because he thought it was a weapon. Officer Lear's own testimony shows his **Terry** frisk was unsupported by any particularized belief that Appellant was armed and dangerous. **See Preacher, supra**.

Moreover, Officer Lear did not immediately recognize the marijuana packet in Appellant's pocket as contraband. Rather, the officer stated it "felt like what could have been a bandana rolled up." (N.T. Suppression Hearing at 6.) By his own admission, Officer Lear's seizure of the marijuana from Appellant's pocket was unjustified under the "plain feel" doctrine. **See Stevenson, supra**. Absent evidence that Officer Lear thought Appellant was armed and dangerous or that the marijuana packet felt like contraband, Officer Lear's search and seizure of the marijuana exceeded the proper scope of a **Terry** pat-down. Based upon the foregoing, we conclude the court should have suppressed the marijuana packet as well, because it was the product of Officer Lear's unlawful search. Accordingly, we affirm in part and reverse in part the suppression ruling in this case, vacate the judgment of sentence, and remand for further proceedings.

Judgment of sentence vacated; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016