J-S74022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL SHIELDS | |
| Appellant | No. 1503 EDA 2017 |

Appeal from the Judgment of Sentence Entered May 1, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0012419-2015

BEFORE:  LAZARUS, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 11, 2019**

Appellant Michael Shields appeals from the May 1, 2017 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his stipulated bench conviction for firearms not to be carried without a license and carrying firearms in public in Philadelphia.[1] Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As recounted by the trial court:

> Appellant was arrested on November 20, 2015 following an encounter with uniformed police officers who were responding to a radio call for gunshots in the area.  Prior to trial, Appellant moved for suppression of the physical evidence seized at the time of his arrest, namely the gun, which was denied by th[e] court. Following a stipulated trial incorporating all testimony heard as

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1) and 6108, respectively.

part of the suppression motion, th[e] court found Appellant guilty of violations of the Uniform Firearms Act [("VUFA")].

The Commonwealth's case consisted of the testimony of one of the responding police officers, Officer Mirabella, as well as four (4) exhibits moved into evidence, including a map of the area where the arrest took place, the property receipt and ballistic report for the gun and certificate of non-licensure. Officer Mirabella testified as follows. He and his partner (McCabe) were in uniform and in a marked police vehicle when they received a radio call at approximately 12:35 am for gunshots on the 2400 block of Park. On cross-examination, he acknowledged that the radio call may have indicated that the shots were coming from inside 2315 North Park. The radio call was vague and did not provide a description nor information on the shooter. As a result of the call, he began to survey the area and within five (5) minutes he came into contact with Appellant near the 2400 block of North 13th which was about one block from where the shots were reported to be fired.

Appellant and another male (defense witness, Sherrod West) were standing near a silver Chevy Impala. The vehicle was parked on the left side of the street and was therefore nearer to Officer Mirabella who was driving the patrol [vehicle]. Mr. West was standing in the street directly behind the car at the trunk area and Appellant was standing near the pavement at the driver's side rear quarter panel. The officer remained in his patrol [vehicle] and asked the men if they had heard gunshots. Mr. West responded 'no' but Appellant did not respond and after looking at the officers he immediately looked away. Officer Mirabella stated that Mr. West was acting normally and was having a casual conversation with the officers. At no time did either officer ask the men to stop nor come to the patrol [vehicle]. Officer Mirabella focused his attention on Appellant because Appellant had quickly looked away and would not make eye contact with the officers.

The officer testified that he could only see Appellant from the midsection up but while observing him, the officer saw Appellant motion (his hand) toward his waistband area and also moved to block his body from behind the car, and bladed his body [a]way from the officers. Further, the officer no longer was able to see Appellant's hand that had [gone] down towards his waistband and over his jacket nor that side of Appellant's waist once Appellant bladed his body behind the car. Although the

officer could not see a firearm, based upon his experience he believed Appellant was in possession of a firearm. At the time of this arrest, Officer Mirabella had been a police officer for three (3) years and had been assigned during that time to the 22nd district which he described as one of the worse crime areas in the city with a lot of shootings and that he had personally recovered several firearms in that district.

Officer Mirabella exited his patrol [vehicle] and approached Appellant and again asked Appellant if he was okay and Appellant did not respond and looked like he was frozen and could [not] speak and then stumbled over his words. He appeared extremely nervous and had sweat across his forehead despite it being the month of [November]. Officer Mirabella then told Appellant to put his hands on the car and performed a **Terry**[2] frisk and found a firearm in the front right side of Appellant's waistband, which was where the officer saw Appellant reach his hand earlier. The officer's thumb had hit the firearm during the frisk and the officer immediately knew it was a firearm. Whereupon Appellant was placed under arrest for VUFA.

On cross-examination, the officer acknowledged that neither man attempted to flee and that some people who have not committed a crime appear nervous and sweat in the presence of police officers. He stated that based upon the totality of the circumstances that he was 70 percent sure Appellant had a gun. The Commonwealth then rested for purposes of the suppression motion.

Appellant called Sherrod West to testify and he did so as follows. He and Appellant were friends and had graduated school together in 2014 and did some film and photo work projects together, including that night. He had misplaced his computer and he and Appellant went outside to his car to try and find it when the marked police [vehicle] came upon them. The officers asked them if everything was okay and he responded yes but that he was the only one talking and that Appellant was "quiet the whole time." He was speaking with Officer Mirabella who had asked if he had thoroughly checked the whole car and then asked if they had anything in the car, to which he responded no. He testified that Officer Mirabella asked him [if] Appellant was okay and he responded [] yes. Officer Mirabella then jumped out of the

---

2 **Terry v. Ohio**, 392 U.S. 1 (1968).

patrol [vehicle] and started talking to Appellant and asked him "what do you have on you?" but Appellant did not say anything in response. The officer then felt Appellant and found a gun.

On cross-examination, Mr. West agreed that officers did not tell him nor Appellant to stop and had just engaged them in a casual conversation and while doing so he was looking at the officers but that only he was talking with the officers not Appellant. He also agreed that Appellant was standing off to the side and that the trunk of the car was in between him and Appellant.

Appellant then was called for demonstrative purposes only and put on the jacket that he was wearing when he was arrested, indicating that it was being worn open that night and th[e] court placed onto the record that the jacket extended about four (4) inches below the waist of Appellant. Appellant then rested for purposes of the motion, with the admission of the police radio call tape. Following argument th[e] court denied the motion to suppress the firearm. The case then proceeded to trial with both the Commonwealth and Appellant agreeing to a stipulated trial with the admission of all evidence received by the court for purposes of the suppression motion, together with a stipulation as to Appellant's good character.

Th[e trial] court found Appellant guilty of both firearms charges and following the submission of a pre-sentencing report, sentenced Appellant within the guidelines.[3] Appellant timely filed his notice of appeal of th[e] court's decision to the Pennsylvania Superior Court. On May 15, 2017 th[e] court issued a Pa.R.A.P. 1925(b) order directing Appellant to file his statement of errors complained of on appeal. However, Appellant's statement was not filed until November 3, 2017, following an order by the Superior Court directing Appellant to do so within twenty-one (21) days. [In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.]

Trial Court Opinion, 12/6/17, 1-5 (unnecessary capitalizations and record citations omitted).

---

[3] Prior to sentencing, Appellant moved for extraordinary relief, renewing his motion to suppress the firearm. The trial court denied the motion on May 1, 2017, on the day of sentencing.

On appeal, Appellant argues only that the trial court erred in denying his motion to suppress the gun. Appellant's Brief at 6, 16.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Griffin**, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. **In re interests of L.J.**, 79 A.3d 1073, 1088-89 (Pa. 2013).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect the people from unreasonable searches and seizures. **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014) (citation omitted). The **Lyles** Court explained:

> Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop and respond. The second, an "investigatory detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.
>
> In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. . . . The totality-of-the-circumstances test is

ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and [our Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

[Our Supreme] Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. Officers may request identification or question an individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business.

*Id.* at 302-03 (internal citations and quotation marks omitted). "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." ***United States v. Mendenhall***, 446 U.S. 544, 553 (1980).

Here, it is undisputed that Officer Mirabella's pat-down of Appellant amounted to an investigative detention necessitating reasonable suspicion. It is settled that reasonable suspicion necessary for investigative detentions

is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that

reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

**Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (citations omitted). In **Commonwealth v. Simmons**, 17 A.3d 399 (Pa. Super. 2011), **appeal denied**, 25 A.3d 328 (Pa. 2011), we explained that Pennsylvania has adopted the holding of **Terry**:

> [T]he **Terry** stop and frisk[] permits a police officer to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. **Terry** further held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others the officer may conduct a pat down search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.
>
> In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. In order to determine whether the police had reasonable suspicion, **the totality of the circumstances—the whole picture—must be considered**. Based upon that whole picture the detaining officers must have a **particularized and objective basis for suspecting the particular person stopped of criminal activity**. To conduct a pat down for weapons, a limited search or frisk of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened.

**Simmons**, 17 A.3d at 403 (citations, quotation marks, brackets, and some paragraph breaks omitted) (emphasis added). In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. **Commonwealth v. Holmes**, 14 A.3d 89, 95 (Pa. 2011); **see Commonwealth v. Williams**, 980 A.2d 667,

672 (Pa. Super. 2009) (citations omitted) (noting that "[r]easonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of circumstances viewed through the eyes of a trained police officer."), *appeal denied*, 990 A.2d 730 (Pa. 2010).

However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Commonwealth v. Taylor*, 771 A.2d 1261, 1268-69 (Pa. 2001). In conducting a reasonable suspicion inquiry, a suppression court is required to "afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[.]" *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010). If weapons are found because of the pat-down search, the police officer may seize them. *Commonwealth v. Thompson*, 939 A.2d 371, 376 (Pa. Super. 2007), *appeal denied*, 956 A.2d 434 (Pa. 2008). Moreover, officers may seize nonthreatening contraband "if it is discovered in compliance with the plain feel doctrine[.]"[4] *Id.*

---

[4] Appellant here does not challenge the applicability of the plain feel doctrine, pursuant to which:

> a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object.

*Commonwealth v. Pakacki*, 901 A.2dd 983 (Pa. 2006).

Instantly, based on the totality of the circumstances of this case, it is beyond peradventure that Officer Mirabella had reasonable suspicion to believe that Appellant might be armed and dangerous. As aptly explained by the trial court:

> [Officer Mirabella] testified that during the initial encounter with Appellant and his friend, Appellant did not answer his questions nor make eye contact with the officers. Further, while speaking with Appellant's friend, [Officer Mirabella] observed Appellant reach his hand down into his waistband area and then blade his body behind the [parked car] so that the officer was no longer able to see either Appellant's hand or his waistband area where Appellant had been reaching. The officer further observed Appellant sweating on his forehead despite the fact that it was a late evening during the month of [November]. Finally, when the officer exited his patrol [vehicle] and went to where Appellant was standing, Appellant again did not respond to the officer's questions, and then stumbled over his words and appeared nervous. Given the totality of the circumstances testified to by Officer Mirabella, including that this was a high-crime area, the late hour (12:30 am), the radio call of shots fired and his observations of Appellant (lack of response to officer's routine questions, lack of eye contact, acting nervous, sweating, reaching his hand down into his waistband area and blading the waistband area of his body behind the vehicle and out of the view of the officers), the officer was able to point to specific and articulable facts for this trial court indicating reasonable suspicion that Appellant was armed and dangerous.

Trial Court Opinion, 12/6/17, at 7. Accordingly, the trial court did not err in denying Appellant's motion to suppress the physical evidence (gun) recovered from Appellant's person by Officer Mirabella because of the pat-down.

Finally, insofar as Appellant relies on *Commonwealth v. Moyer*, 954 A.2d 659 (Pa. Super. 2008) (*en banc*), *appeal denied*, 966 A.2d 571 (Pa. 2009), *Commonwealth v. Preacher*, 827 A.2d 1235 (Pa. Super. 2003),

*Commonwealth v. Gray*, 896 A.2d 601 (Pa. Super. 2006), and *Commonwealth v. Cooper*, 994 A.2d 589 (Pa. Super. 2010), *appeal denied*, 13 A.3d 474 (Pa. 2010), to challenge the trial court's denial of his suppression motion, such reliance is misplaced because the instant case is distinguishable.

In *Moyer*, the Commonwealth argued that the investigative detention of the defendant was supported by reasonable suspicion because there "was a lot of movement between the driver and the passenger," all of which focused down toward the floor boards and toward the passenger side of the vehicle, and the defendant was nervous. *Moyer*, 954 A.2d at 669. In affirming the trial court's grant of the defendant's suppression motion, we disagreed with the Commonwealth's contention. In so doing, we found that "[f]urtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion." *Id.* at 670. Here, Appellant's furtive movements were more pronounced because he reached for his waistband, bladed his body from Officer Mirabella's view and otherwise sought to conceal his body behind the parked car. Unlike in *Moyer*, Officer Mirabella also specifically articulated the reason for Appellant's nervousness. As noted earlier, Officer Mirabella testified that Appellant did not respond to his questions and, after looking at the officers, Appellant immediately looked away. Appellant failed to make any eye contact and did not respond to the officer's questions. Additionally, Officer Mirabella described Appellant as sweating on a cold November night.

Similarly, the instant case is distinguishable from **Preacher**, **Gray**, and **Cooper**. In **Preacher**, we concluded that the officer "did not articulate any specific facts that led him to believe that [the defendant] may have been armed and/or dangerous." **Preacher**, 827 A.2d at 1240. Rather, the officer observed only that the defendant was acting nervously because his "eyes were bulging, he was looking back and forth, [and] tossing the money" he had in his hands. *Id.* In **Gray**, we held that the officer did not have reasonable suspicion to pat down the defendant because the officer "had very little basis to believe that [the defendant] was armed and dangerous. In fact, but for nervousness, police had no basis: the articulated justification for intruding into [the defendant's] privacy was that he seemed to be 'a little nervous' and slightly sweating." **Gray**, 896 A.2d at 606. In **Cooper**, we concluded, *inter alia*, that the police officer did not have reasonable suspicion to conduct a pat-down search at 9:00 a.m. because there was no evidence that the defendant was in a "dangerous neighborhood." **Cooper**, 994 A.2d at 594. Additionally, we noted that the defendant "merely moved toward his pocket and ceased immediately upon the officer's directive." *Id.* Here, as mentioned earlier, Officer Mirabella, who was responding to a radio call for shots fired, had reasonable suspicion to believe that Appellant was armed and dangerous. Appellant, standing outside in a high-crime area at 12:30 am, appeared nervous, reached toward his waistband, bladed his body away from the officers, failed to make eye contact, and seemed non-responsive to the officer's questions.

In sum, in light of the totality of the circumstances present here, we cannot conclude that the trial court erred in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/19