J-A08031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                                   :         PENNSYLVANIA
          Appellee              :
                                     :
             v.                   :
                                       :
VICTOR ROJAS,                         :
                                       :
          Appellant           :     No. 2644 EDA 2017

Appeal from the Judgment of Sentence July 19, 2017
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005781-2016

BEFORE:   PANELLA, LAZARUS, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED MARCH 04, 2019**

Victor Rojas (Appellant) appeals from the judgment of sentence imposed following his conviction for possession of drug paraphernalia. Specifically, he challenges the trial court's order denying his motion to suppress the paraphernalia discovered during a frisk of his person incident to a traffic stop. We vacate the judgment of sentence, reverse the order denying the motion to suppress, and remand for further proceedings consistent with this memorandum.

The trial court summarized the relevant factual history of this matter as follows.

> On June 25, 2016, around 12:45 [a.m.], Sergeant Brian Rathgeb, police officer of [25 years] and sergeant with the Pottstown Police Department since 2009, was in full police uniform and patrolling in his squad vehicle the area near the intersection of King and York Streets in Pottstown borough. This *specific* area of Pottstown borough is a high-crime area, e.g., prostitution, drug sales, shootings.

* Retired Senior Judge assigned to the Superior Court.

As the sergeant was approaching the intersection of King and York Streets, he happened upon Appellant's vehicle, a red Kia, which was illegally parked 'right up against the stop sign' at the intersection, with the parking lights on and still in the lane of traffic. Notably, there was no one else on the street at this time. As the sergeant passed Appellant's Kia, the squad vehicle's headlights lit up the interior of Appellant's vehicle, and it appeared to the sergeant that Appellant had his head down and was possibly unconscious. Given these observations, the sergeant suspected a potential emergency situation, i.e., an[] overdose, particularly give[n] the rampant 'opioid abuse and people that are overdosing in that general area, as well as throughout Pottstown.' So, the sergeant made a U-turn, activated his emergency lights, called in the information for the stop, and then after parking his squad car, approached Appellant's vehicle.

The sergeant asked Appellant through his window whether he was having a medical emergency, to which Appellant, whilst apparently manipulating his cell phone, responded he was fine and that he was waiting to pick up and take a friend to Walmart to get groceries. At this time, Appellant did not appear to be impaired to the sergeant but was 'slightly nervous.' The sergeant asked Appellant the name of his alleged friend he was picking up[.] Appellant indicated he was unaware of the person's real name, and instead gave multiple nicknames. The sergeant then asked for the alleged friend's address, to which Appellant did not give a numerical address, but instead [generally pointed to] a building located on the corner of the intersection. The entire encounter at this point was several minutes, and at no time did anyone come out of the alleged friend's house and jump into Appellant's vehicle to be taken to Walmart to get groceries as Appellant claimed.

The sergeant checked the registration of the vehicle Appellant was driving and discovered it was registered to another person with a Pittsburgh, Pennsylvania address, which was significant to the sergeant because, according to his testimony, there is an 'influx of people from other larger cities coming to Pottstown for the purpose of getting involved in the drug trade.' Based upon all the circumstances, the sergeant believed Appellant was stopped at this particular intersection to purchase narcotics. Furthermore, given the sergeant's belief, and his extensive experience and particularized training with

drug investigations and violent crime, the sergeant was also concerned for the presence of potential weapons, which are often used as protection in the drug trade[,] or for needles [] or other ingestion paraphernalia that are involved in heroin overdoses common in the area.  With that, the sergeant asked Appellant to exit the Kia and explained that he would pat Appellant down for both of their safety, to which Appellant complied without objection.  As the sergeant conducted the [pat down] and made his way to Appellant's right pockets, Appellant spontaneously admitted he had his 'weed pipe' and the sergeant also found and removed from Appellant's person another item – a glass pipe with both ends charred and copper filtering on one end.[1]  After finding said drug paraphernalia, the sergeant handcuffed Appellant and placed him under arrest.

Trial Court Opinion, 1/3/2018, at 1-3 (emphasis in original; record citations omitted).

Appellant was arrested and charged with possession of drug paraphernalia.  Prior to trial, Appellant filed a motion to suppress evidence, contending that the frisk of Appellant's person was unconstitutional.  Sergeant Rathgeb and Appellant testified at the suppression hearing.  At the

_____

[1] Our review of the record reveals that the trial court's factual findings are supported by the testimony at the suppression hearing, except its finding that Sergeant Rathgeb recovered two items on Appellant's person.  At the suppression hearing, Sergeant Rathgeb testified that when he put his hand on Appellant's right pockets, Appellant "indicated that was his weed pipe." N.T., 2/14/2017, at 14.  Appellant was wearing shorts underneath his pants; the testimony is not clear whether the weed pipe was located in Appellant's inner or outer layer.  *See id.* at 14-15; 24-26.  During his description of his pat down of Appellant, Sergeant Rathgeb stated that he "removed … a glass pipe with charred ends on both sides …and copper filtering on the one end." *Id.* at 14.  In response to the district attorney's next question, Sergeant Rathgeb reiterated his response, stating, "Like I said, once I had my hand on that particular item, [Appellant] offered it and said that was his weed pipe. And then I retrieved it." *Id.* at 15.  Thus, it is apparent that Sergeant Rathgeb retrieved only one item.

conclusion of the suppression hearing, the trial court denied Appellant's motion to suppress with minimal elaboration as to its reasons.[2]  On the same day as the suppression hearing, February 14, 2017, the trial court conducted a stipulated bench trial, and found Appellant guilty of possession of drug paraphernalia.  On July 19, 2017, the trial court sentenced Appellant to one year of probation.  This timely-filed appeal followed.  Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents one issue for this Court's consideration: "Did the [trial] court erroneously deny Appellant's motion to suppress physical

_____

[2] At the conclusion of the suppression hearing, the only explanation offered by the trial court was Sergeant Rathgeb's testimony that drug activity often occurs in the area in which he stopped and frisked Appellant.  N.T., 2/14/2017, at 40, 42-43.  This is insufficient to comply with Pa.R.Crim.P. 581(I).  A trial court has a duty to explain its factual findings and conclusions of law on the record at the conclusion of a suppression hearing. Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute….").  Although in this case the trial court's failure to abide by Rule 581 has not impeded our appellate review due to the trial court's subsequent explanation of its rationale in its Pa.R.A.P. 1925(a) opinion, both our Supreme Court and this Court have strongly disapproved of trial court's failure to abide by Rule 581's "unambiguous mandate."  **See Commonwealth v. Millner**, 888 A.2d 680, 688 (Pa. 2005) (explaining the purpose of the rule); **Commonwealth v. Grundza**, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) ("We note that the filing of a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I).").

evidence where the arresting officer conducted a **Terry**[3] frisk without reasonable suspicion to believe that crime was afoot and that Appellant was armed and dangerous?" Appellant's Brief at 4. We consider this issue mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

**Commonwealth v. Perel**, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010)).

Appellant focuses his challenge on the frisk portion of the encounter. In his brief, Appellant argues that even if Sergeant Rathgeb had justification for his initial seizure of Appellant, his subsequent frisk of Appellant's person was unconstitutional because Sergeant Rathgeb lacked reasonable suspicion that criminal activity was afoot and that Appellant was armed and

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

- 5 -

dangerous. Appellant's Brief at 13-14. Appellant contends neither his presence in a high-crime area, nor his commission of a traffic violation justified the frisk. *Id.* at 15-19. According to Appellant, he was coherent and cooperative, and therefore his behavior could not have served as reasonable suspicion. *Id.* at 19-20. Specifically, Appellant argues that Sergeant Rathgeb had no justification to frisk him, because "there was no furtive movement, no undue nervousness, no suspicious bulge, no intoxication, no suspicious transaction, and no attempt to avoid contact with the police." *Id.* at 23.

Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect people from unreasonable searches and seizures. ***Commonwealth v. Lyles***, 97 A.3d 298 (Pa. 2014). During the course of a valid investigatory stop, if an officer observes unusual and suspicious conduct on the part of the individual, which leads the officer to believe reasonably that the individual may be armed and dangerous, the officer may conduct a pat down of the suspect's outer garments for weapons. ***Commonwealth v. E.M.***, 735 A.2d 654, 659 (Pa. 1999). "In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous." ***Commonwealth v. Wilson***, 927 A.2d 279, 284 (Pa. Super. 2007).

At the suppression hearing, Appellant conceded that the Commonwealth had "met its burden in terms of initial contact" based upon the parking infraction and concern that Appellant was unconscious. N.T., 2/14/2017, at 32, 35. Having determined quickly that Appellant was not in peril, Sergeant Rathgeb proceeded to address Appellant's traffic violation. Appellant acknowledges that **Pennsylvania v. Mimms**, 434 U.S. 106 (1977), permits a police officer to order the driver to exit the vehicle during a lawful traffic stop, even absent reasonable suspicion that criminal activity is afoot. **See** Appellant's Brief at 17. However, Appellant argues that the authority to conduct the traffic stop and order the driver out of the car does not automatically give an officer the authority to conduct a **Terry** frisk.[4]

_____

[4] Appellant also argues, alternatively, that the frisk was illegal because by the time he was frisked, the traffic stop should have concluded already. Appellant's Brief at 23. According to Appellant, once he explained why he was parked illegally, the officer should have issued him a parking ticket or ordered him to move the car to a legal spot. **Id.**

"Once the primary traffic stop has concluded … the officer's authority to order either driver or occupant from the car is extinguished." **Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002) (*en banc*). "Thus, if … the officer directs or requests the occupants to exit the vehicle [after the traffic stop has concluded, the officer's] show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion." **Id.** "Authority for the seizure thus ends when tasks tied to the traffic infraction are - or reasonably should have been - completed." **Rodriguez v. United States**, __ U.S. __, 135 S.Ct. 1609, 1614 (2015).

Appellant has waived any challenge to the stop by not including such challenge in his concise statement and question presented. **See** Pa.R.A.P.
*(Footnote Continued Next Page)*

Appellant is correct. "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). As our Supreme Court has explained,

> [I]f the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Stevenson*, 744 A.2d 1261, 1264-65 (Pa. 2000) (citations and quotation marks omitted).

In its Rule 1925(a) opinion, the trial court explained that it found Sergeant Rathgeb's testimony to be credible, whereas it rejected Appellant's testimony because he could not recall whether the encounter occurred during day or night and he failed to provide an adequate explanation as to why he never called or texted the person he purportedly was picking up to go grocery shopping at quarter-to-one in the morning. Trial Court Opinion,

_(Footnote Continued)_ ─────────────

1925(b)(4)(vii), 2116(a). Further, Appellant's legal analysis in his brief relates to the issue of whether Sergeant Rathgeb had independent reasonable suspicion to justify the frisk, not to whether Sergeant Rathgeb had prolonged the traffic stop unlawfully. Appellant's Brief at 20-23. Thus, Appellant has also waived this argument for failure to develop it in his brief. *See* Pa.R.A.P. 2119.

1/3/2018, at 8-9. The trial court relied upon the following "totality of the circumstances" to conclude that Sergeant Rathgeb had adequate "reasonable suspicion of criminal activity" to request that Appellant step out of his vehicle and undergo a *Terry* frisk: (1) Appellant's illegally parking his vehicle at almost 1:00 a.m. at an intersection known to police to be a high-crime area related to drugs, prostitution, and violent crime; (2) the deserted streets around Appellant's vehicle; (3) Appellant's appearing slumped over and unconscious in his vehicle in an area known for overdoses; (4) Appellant's non-credible excuse for being parked illegally; (5) Appellant's appearing nervous and not knowing the full name of the friend he was purportedly picking up; (6) Appellant's never calling or texting the friend during the stop and the friend's failure to appear; (7) Appellant's failure to provide his friend's exact address; (8) Appellant's car being registered to another person with a Pittsburgh address, when there is an influx of people from larger cities coming to Pottstown to get involved with the drug trade; and (9) Sergeant Rathgeb's fear that Appellant was associated with the drug trade and possessed a weapon or needles. *Id.* at 9-10. Based on the foregoing, the trial court concluded that the "Commonwealth met its burden of proving there was reasonable, individualized suspicion that Appellant was pursuing a criminal exercise in the moment that ultimately supported the sergeant's actions, including the search of Appellant's person revealing drug paraphernalia." *Id.* at 8.

However, even if the trial court is correct that Sergeant Rathgeb had adequate reasonable suspicion to conclude that Appellant was engaged in criminal activity, such reasonable suspicion is not enough to justify frisking Appellant. *Commonwealth v. Preacher*, 827 A.2d 1235, 1239 (Pa. Super. 2003) (concluding that even if officer was justified in conducting investigatory stop based on reasonable suspicion that Preacher was selling cocaine, officer still needed reasonable suspicion that Preacher was armed and dangerous to conduct pat down). In order to frisk Appellant, Sergeant Rathgeb needed "specific and articulable facts indicating" that Appellant may have been "armed and dangerous." *Id*. Thus, the trial court erred by using an incorrect standard to assess Sergeant Rathgeb's decision to frisk Appellant.

Furthermore, even if the trial court used the correct standard, the trial court erred in applying that standard. Sergeant Rathgeb's specific articulated reason for frisking Appellant was "for [the sergeant's] safety and [Appellant's] safety." N.T., 2/14/2017, at 13. A general statement that a frisk was required for officer safety and the safety of the person searched does not provide a sufficient basis for conducting a frisk incident to an investigatory stop. *Preacher*, 827 A.2d at 1239. It is imperative that the police "point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' … becomes meaningless." *Id*. "While

- 10 -

this Court acknowledges the importance of protecting police officers in the performance of their duties, the law requires that an officer have some reason to believe that a **particular** suspect is armed and dangerous." *Id.* (emphasis added).

Upon further questioning, Sergeant Rathgeb specified that he was "[a]bsolutely" concerned that Appellant had a weapon because people "involved with the drug trade normally will carry some type of weapon for protection[.]" N.T., 2/14/2017, at 14. Specifically, Sergeant Rathgeb believed Appellant may have been in the area to purchase drugs. *Id.* at 13 ("So, in myself [*sic*] opinion and my belief, I felt that criminal activity was afoot, possibly [Appellant] was there for the purpose of meeting somebody to purchase narcotics."). Sergeant Rathgeb concluded that Appellant may have been present to buy drugs based upon his skepticism of Appellant's excuse for being in a high-crime area late at night, Appellant's slight nervousness during his conversation with Sergeant Rathgeb, and the registration of Appellant's car to someone with a Pittsburgh address. In addition to his concern about weapons, when asked if he has encountered people carrying needles in the area, Sergeant Rathgeb responded affirmatively. *Id.*

Sergeant Rathgeb's concern that Appellant may have been present at King and York Streets to purchase drugs, or was somehow otherwise generally involved in the drug trade, is insufficient to form reasonable

suspicion that Appellant specifically was armed and dangerous. "Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires individualized, reasonable suspicion before a frisk for weapons can be conducted." *Commonwealth v. Grahame*, 7 A.3d 810, 816 (Pa. 2010) (quoting *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)). Notwithstanding the presence of violence in the illegal drug industry, our Supreme Court has refused to justify an intrusion on privacy based solely on the seriousness of the criminal activity under investigation, including the sale of drugs. *Commonwealth v. Rodriguez*, 614 A.2d 1378, 1383 (Pa. 1992). "[C]ourts cannot abandon the totality-of-the-circumstances test and rely exclusively upon the preconceived notion that certain types of criminals regularly carry weapons." *Grahame*, 7 A.3d at 816 (citing *Commonwealth v. Zhahir*, 751 A.2d 1153, 1162 (Pa. 2000)).

Further, while Sergeant Rathgeb noted that he has encountered others in the area carrying needles, he never articulated a concern that he suspected Appellant specifically of carrying a needle, or that Appellant's conduct conveyed a threat of danger to the sergeant. While Appellant acted slightly nervous when Sergeant Rathgeb encountered him, there is no indication that Sergeant Rathgeb detected unusual behavior or furtive movements, observed a suspicious bulge, or had knowledge of any past violence from Appellant. *See Grahame*, 7 A.3d at 817 (examining the presence of such factors because generalization that firearms are commonly

found in proximity to illegal drugs is insufficient without additional facts supporting an objectively reasonable belief that person had been presently armed and dangerous). *C.f. Zhahir*, *supra* (holding that, where officers confronted Zhahir in area known for drug activity at eight p.m. during investigation of narcotics trafficking, and in response to police presence Zhahir discarded an item, surveilled the street, retrieved the item, and turned to face officer with his hand in his jacket pocket, officer's concern that Zhahir may have been retrieving a weapon from his pocket was justified). Because the Commonwealth failed to elicit facts that sufficiently supported an objectively reasonable belief that Appellant was armed and dangerous, the trial court's decision cannot be sustained. Accordingly, we vacate the judgment of sentence and reverse the order denying the motion to suppress.

Judgment of sentence vacated. Order denying motion to suppress reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/4/2019*

- 13 -